MARY P. McCURDY (SBN 116812)
ROBERT J. SCOTT, Jr. (SBN 151775)
McCURDY FULLER RUETTGERS LLP
4300 Bohannon Drive, Suite 240
Menlo Park, California 94025
Telephone: (650) 618-3500
Facsimile: (650) 618-3599
E-mail: mary.mccurdy@mccurdylawyers.com
E-mail: robert.scott@mccurdylawyers.com

Attorneys for Plaintiff
AIG COMMERCIAL INSURANCE
COMPANY OF CANADA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| AIG COMMERCIAL INSURANCE COMPANY OF CANADA, | CASE NO.: |
|---|---|
| Plaintiff, | **COMPLAINT** |
| v. | |
| AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY and DOES 1 through 10, inclusive | |
| Defendants. | |

COMES NOW PLAINTIFF AIG COMMERCIAL INSURANCE COMPANY OF CANADA ("AIG Canada"), on behalf of itself and no other party, alleges and avers as follows:

1. **Jurisdiction:** This is a civil action over which this court has original jurisdiction under 28 U.S.C. § 1332(a)(2) in that it is a civil action between a citizen of Canada and a citizen of the United States and the amount in controversy exceeds $75,000.

2. **Venue:** Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claim occurred in San Francisco, California.

3. Plaintiff AIG Canada is a corporation organized and existing under the laws of the Province of Ontario, Canada with its principle place of business in Toronto, Ontario.

4. Defendant American Guarantee & Liability Insurance Company ("AGLIC") is, on information and belief, a United States corporation with its principle placed of business in

52563

- 1 -

**COMPLAINT**

Schaumberg, Illinois.

## GENERAL ALLEGATIONS

A. <u>The Sub-Management Agreement</u>

5. The Millennium Market Street Center is a mixed use condominium development located at 765 Market Street in San Francisco, California ("765 Market Street"). The project consists of approximately 142 luxury residential condominiums together with a common area. Additionally, there are commercial components that consist of six commercial condominium units comprised of two hotel units, one sports club, one retail unit, one museum unit, and one parking unit.

6. Four Seasons Hotels Limited ("Four Seasons" or "Sub-Manager") entered into a Condominium and Property Sub-Management and Hotel Services Agreement ("Sub-Management Agreement") with: CB-1 Entertainment Partners LP ("Owner"); the 765Market Street Residential Owners Association ("Residential Association"); The Millennium Market Street Center Association ("Center Association"); and Millennium Partners California Management LLC ("Manager"). Pursuant to the Sub-Management Agreement, Four Seasons assumed the responsibility for various property management functions including maintenance and repair of the common areas and the residential component.

7. The Sub-Management Agreement, at Section 5.1(e), provides that Four Seasons shall provide, inter alia, the following services:

> Hire, train, discharge and supervise the work of all persons necessary to be employed in order to enable Sub-Manager to perform its obligations under this Agreement; . . . Sub-Manager shall have the option to employ persons on behalf of each Managed Condominium Association in its own name as employees of the Sub-Manager (or in the name of an Affiliate (an "Employment Affiliate"))

8. On information and belief, AIG alleges that Four Seasons created an "Employment Affiliate," within the meaning of Section 5.1(e), known as Four Seasons San Francisco Employment, Inc. ("FSSFE").

9. Section 5.1(e) further provides that "Sub-Manager shall not be responsible to Manager, or any Managed Condominium Association or Hotel Owner for any loss, damages or

liability in connection with such employees . . ."

10. The Sub-Management Agreement provides with respect to insurance, at Section 5.01, in relevant part:

> (i) Insurance. On behalf of and at the expense of the applicable Managed Condominium Association, from and after the completion of construction of the Center, Sub-Manager shall cause to be maintained, through the agent and brokers designated by Manager and approved by Sub-Manager and the applicable Managed Condominium Association, in such amounts and with such insurance companies as the applicable Managed Condominium Association shall approve and in accordance with the applicable Declaration and Bylaws, property insurance, insuring against all-risk of direct physical damage, including earthquake (if reasonably available and affordable), public liability, elevator liability, boiler worker's compensation, and such other insurance as each Managed Condominium Association, Manager and Sub-Manager shall deem necessary for the protection of the interests of the Managed Condominium Associations, Manager and Sub-Manager; and Sub-Manager, Manager and Owner shall be named as insured parties in all liability policies. . . .

11. Section 16(d) of the Sub-Management Agreement, entitled "Miscellaneous," provides for indemnification of Four Seasons in relevant part as follows:

> To the extent Sub-Manager shall not be fully covered by insurance, Manager and each Managed Condominium Association shall, . . . indemnify, exonerate and save harmless Sub-Manager against and from any and all loss, claim, damage, cost liability or expense (including reasonable attorneys' fees) arising out of an action or omission or course of action on the part of the Sub-Manager in the performance of its duties hereunder, arising out of or in connection with the operation of the Center or any component thereof . . . For purposes of this Section 16(d) the term "Sub-Manager" shall include any Employment Affiliate of Sub-Manager.

12. Section 16(e) of the Sub-Management Agreement further provides:

> In the performance of its duties hereunder, Sub-Manager shall act solely as agent of Manager and the Managed Condominium Associations. . . All debts and liabilities to third persons required or permitted to be incurred by Sub-Manager pursuant to and in accordance with this Agreement shall be the debts and liabilities of the Managed Condominium Associations only, and Sub-Manager shall not be liable by reason of its activities hereunder. . .

The Flooding Incident and Subrogation Lawsuit

13. On May 14, 2009, FSSFE employees were performing repair work on the Center's hot water system which involved the draining of water from the entire building. During this repair

52563
- 3 -
**COMPLAINT**

work, a valve was left open resulting in the flooding of a private residential unit, Penthouse 3D, which sustained substantial water damage ("Flood Incident").

14. At the time of the Flood Incident, Grand Penthouse, LLC, the titled owner of Penthouse 3D, was insured by Fireman's Fund Insurance Company for loss and damage of the type suffered as a result of the water system repair work.

15. On September 22, 2009, Fireman's Fund filed a complaint for negligence against Does 1-50, at San Francisco County Superior Court, Case no. CSC-09-492760 ("Subrogation Action"). The complaint was amended in February, 2010 to substitute Four Seasons Hotels Limited as Doe No. 1. On August 3, 2010, the complaint was again amended to substitute FSSFE as Doe No. 50. The complaint alleged that the defendants were negligent in failing to close, or in leaving open, a vent or valve on certain equipment that was part of the building's hot water system and was located on the roof of 765 Market Street. Fireman's Fund alleged that it had paid or would have to pay Grand Penthouse, LLC for the flood loss.

16. The Subrogation Action settled in or about October, 2013 for payment on behalf of Four Seasons and FSSFE of seven million five hundred thousand dollars ($7,500,000).

The Insurance Policies

17. Millennium Partners obtained liability insurance for 765 Market Street through a commercial general liability policy issued by Federal Insurance Company ("Federal"), policy no. 7959-55-89, for the policy period June 28, 2008 to June 28, 2010 ("Federal Policy"). Despite the requirement in the Sub-Management Agreement that Four Seasons be named as an insured on the policy, the Federal Policy did not identify Four Seasons as an insured. The Federal Policy did, however, include as an "insured":

> Persons (other than your employees) or organizations acting as your real estate managers are insureds; but they are insureds only with respect to their duties as your real estate managers.

18. Federal accepted the defense of Four Seasons and FSSFE in the Subrogation Action and paid $2 million, its full policy limit, toward the settlement of the Subrogation Action.

19. Defendant AGLIC issued Commercial Umbrella Policy no. AUC 9007010-05 to Integrated Risk Facilities, Inc., a Risk Purchasing Group, for the policy period 10/1/08-10/1/09

52563

- 4 -

**COMPLAINT**

("AGLIC Policy"). The AGLIC Policy has a $25M occurrence/aggregate limit. A Certificate of Insurance identifies Millennium Partners as an insured from 11/6/08-11/6/09.

20. The "Schedule of Underlying Insurance" on the AGLIC Policy lists the underlying commercial general liability policies nos. as "various." The underlying policy information is provided on the Certificate of Insurance issued to Millennium Partners and lists Federal policy no. 7959-55-89 (i.e., the Federal Policy). The 765 Market Street project is identified as an insured location on the certificate.

21. Section I., "Coverage," of the ALGLIC Policy contains the following Insuring Agreement:

> Coverage A – Excess Follow Form Liability Insurance
>
> Under Coverage A, we will pay on behalf of the **insured**, those damages covered by this insurance in excess of the total applicable limits of **underlying insurance**. With respect to coverage A, the terms and conditions of **underlying insurance** are made a part of this policy, except with respect to:
>
> 1. Any contrary provision contained in this policy; or
>
> 2. Any provision in this policy for which a similar provision is not contained in **underlying insurance**.
>
> With respect to the exceptions stated above, the provisions of this policy will apply.
>
> Notwithstanding anything to the contrary contained above, if **underlying insurance** does not apply to damages, for reasons other than exhaustion of applicable limits of insurance by payment of claims, then Coverage A does not apply to such damage.

22. In Section II. "Limits of Insurance," the AGLIC Policy provides:

> 1. If the limits of **underlying insurance** have been reduced solely by payment of loss for which coverage is afforded under this policy, this policy will drop down to become immediately excess of the reduced underlying limit; or
>
> 2. If the limits of **underlying insurance** have been exhausted solely by payment of loss for which coverage is afforded under this policy, this policy will continue in effect as **underlying insurance**.

23. The AGLIC Policy defines **underlying insurance** as follows:

- 5 -
**COMPLAINT**

> **Underlying insurance** means the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy.

24. The AGLIC Policy includes the following definition:

> **Insured** means:
>
> a. You; and
>
> b. Any person or organization included as an **insured** in **underlying insurance**.

25. Despite the fact that the entire amount of the loss was within its policy limits, AGLIC paid only $2 million toward settlement of the Subrogation Action.

26. AIG Canada issued comprehensive general liability policy no. 1676436 to Four Seasons Holdings Inc. and Four Seasons Hotels Limited for the policy period November 1, 2008 to November 1, 2009 ("AIG Primary Policy"). The AIG Primary Policy contains a $2M per occurrence limit of liability as respects property damage.

27. The AIG Primary Policy provides that it excludes liability arising out of:

> 3. The rendering of, or the failure to render professional services by the "Insured", except such professional services as are an integral part of the "insured's" operations or work performed by or on behalf of the "Insured" or are incidental to the manufacturer, installation, sale, handling or distribution of the "Insured's" Products.

28. The AIG Primary Policy describes the insured's operations as "consisting principally but not exclusively of hotel, resorts, restaurants and hospitality operations."

29. The AIG Primary Policy paid a full $2 million limit toward the settlement of the Subrogation Action.

30. AIG Canada issued commercial umbrella liability policy no. BE 1258612 to Four Seasons Holdings, Inc. and Four Seasons Hotels Ltd. for the policy period November 1, 2008 to November 1, 2009 ("AIG Umbrella Policy"). The policy provides for a $25M limit applicable to an occurrence of property damage.

31. The excess insuring agreement on the AIG Umbrella provides, in relevant part:

> I. Coverage – To pay on behalf of the **Insured** that portion of the **Ultimate Net Loss** in excess of the retained limit which the **Insured** shall become legally obligated to pay as damages for liability imposed upon the **Insured** by law, or liability assumed by

> the Insured under contract, because of **Bodily Injury** or **Property Damage** . . . that takes place during the policy period and is caused by an Occurrence happening anywhere in the world.

32. The AIG Umbrella Policy further provides, with respect to "Limits of Liability – Retained Limit" in relevant part as follows:

> The Company shall be liable only for that portion of the Ultimate Net Loss excess of the Insured's retained limit defined as either:
>
> 1. the total applicable limits of underlying policies listed in the Schedule of Underlying Insurance hereof, and/or the applicable limits of any other underlying insurance providing coverage to the **Insured**;

33. The AIG Umbrella Policy contains Endorsement no. 14, entitled "Professional Liability Limitation Endorsement," which provides in relevant part that the policy shall not apply to:

> any liability arising out of the rendering of, or the failure to render professional services by the "Insured", except such professional services as are an integral part of the "insured's" operations or work performed by or on behalf of the "Insured" or are incidental to the manufacturer, installation, sale, handling or distribution of the "Insured's" Products.

34. The AIG Umbrella Policy paid $1,500,000 toward the settlement of the Subrogation Action.

## FIRST CLAIM FOR RELIEF

(Declaratory Relief – FSSFE is Insured under the AGLIC Policy)

35. AIG Canada incorporates by reference paragraphs 1 through 34 above, as though fully set forth herein.

36. The Federal Policy includes as an insured any person or organization "acting as your real estate managers" with respect to liability arising out of those duties. The AGLIC Policy extends insured status to any person or organization that is an insured on the scheduled underlying insurance, in this case the Federal Policy. In performing the repairs to the water system on the top of the 765 Market Street building, the FSSFE employees were acting in the capacity of Millennium's real estate managers, a fact recognized by Federal when it accepted the defense of FSSFE in the Subrogation Action.

37. A justiciable controversy has arisen between plaintiff and defendant in that AIG

1  Canada contends, and AGLIC disputes, that FSSFE is an insured under the Federal Policy, and
2  therefore under the AGLIC Policy, because at the time of the Flood Incident the FSSFE
3  Employees were acting as Millennium's real estate managers. AIGLIC contends, and AIG Canada
4  disputes, that FSSFE is not an insured because it was not a signatory to the Sub-Management
5  Agreement.

6      38. AIG Canada requests that the court resolve the present and actual controversy
7  between the parties by issuing a judgment declaring the rights and obligations of the parties with
8  respect to FSSFE's status as an insured under the AGLIC Policy.

## SECOND CLAIM FOR RELIEF

(Declaratory Relief – AIG Canada Policies are Excess to AGLIC Policy)

11      39. AIG Canada incorporates by reference paragraphs 1 through 38 above, as though
12  fully set forth herein.

13      40. The Sub-Management Agreement requires Millennium and the condominium
14  associations to obtain and pay for appropriate insurance "necessary for the protection of the
15  interests" of Four Seasons. The Sub-Management Agreement further provides that any liabilities
16  that Four Seasons incurs "shall be the debts and liabilities of the Managed Condominium
17  Associations only, and Sub-Manager shall not be liable by reason of its activities" as Sub-
18  Manager. Further, the Sub-Management Agreement provides that Millennium and the Managed
19  Condominium Associations shall hold Four Seasons harmless and indemnify it against any losses
20  not fully covered by insurance.

21      41. By reason of its payments under the AIG Primary Policy and the AIG Umbrella
22  Policy in settlement of the Subrogation Action, AIG Canada became equitably subrogated to the
23  rights of Four Seasons under the Sub-Management Agreement, including those rights inherent in
24  the risk transfer provisions set forth in the Agreement that require Federal and AGLIC bear the full
25  burden of indemnifying Four Seasons and FSSFE for the settlement in the Subrogation Action.

26      42. A justiciable controversy exists between the parties in that AIG Canada contends,
27  and AGLIC denies, that AGLIC was solely obligated to indemnify Four Seasons and FSSFE for
28  the full amount of the settlement in excess of the Federal Policy's $2 million limit.

McCURDY FULLER RUETTGERS LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

52563

- 8 -

**COMPLAINT**

43. AIG Canada requests that the court resolve the present and actual controversy between the parties by issuing a judgment declaring the rights and obligations of the parties with regard to their respective insurance policies in view of the risk transfer protocol established by the Sub-Management Agreement.

### THIRD CLAIM FOR RELIEF

(Declaratory Relief – Professional Services Exclusion)

44. AIG Canada incorporates by reference paragraphs 1 through 43 above, as though fully set forth herein.

45. The AIG Primary Policy and the AIG Umbrella Policy bar coverage for liability arising out of professional services performed by Four Seasons. On information and belief, AIG Canada alleges that the "Sub-Manager" services provided by Four Seasons and, by extension, FSSFE, fall within the scope of the professional services exclusions on the AIG Primary Policy and the AIG Umbrella Policy.

46. A justiciable controversy exists between the parties in that AIG Canada contends and, on information and belief, AGLIC disputes, that the claims alleged against Four Seasons and FSSFE in the Subrogation Action fall within the scope of the professional services exclusions.

47. AIG Canada requests that the court resolve the present and actual controversy between the parties by issuing a judgment declaring the rights and obligations of the parties with regard to the application of the professional services exclusions to the claims in the Subrogation Action.

### FOURTH CLAIM FOR RELIEF

(Declaratory Relief – Priority of Coverage: AIG Umbrella Policy v. AGLIC Policy)

48. AIG Canada incorporates by reference paragraphs 1 through 47 above, as though fully set forth herein.

49. The AIG Umbrella Policy provides that it pays only in excess of the "retained limit," defined as the limits of the scheduled underlying insurance (the AIG Primary Policy) and "applicable limits of any other underlying insurance providing coverage to the Insured." The AGLIC Policy provides that upon exhaustion of the scheduled underlying insurance (the Federal

Policy), "this policy will continue in effect as underlying insurance."

50. A justiciable controversy exists between the parties in that AIG Canada contends, and AGLIC denies, that the terms of their respective insurance policies dictate that the AIG Umbrella Policy is excess to the AGLIC Policy.

51. AIG Canada requests that the court resolve the present and actual controversy between the parties by issuing a judgment declaring the rights and obligations of the parties with respect to the priority of coverage as between the AIG Canada Umbrella Policy and the AGLIC Policy.

## FIFTH CLAIM FOR RELIEF

(Equitable Subrogation/Indemnity)

52. AIG Canada incorporates by reference paragraphs 1 through 51 above, as though fully set forth herein.

53. The equitable positions of the parties require that AGLIC bear the full cost of indemnifying Four Seasons and FSSFE for the settlement of the Subrogation Action in excess of the Federal Policy's $2 million limit.

54. Equity and good conscience require that AGLIC reimburse AIG Canada for the full amount of its contribution to settlement of the Subrogation Action under both the AIG Primary Policy and the AIG Umbrella Policy.

55. Wherefore, AIG Canada prays for judgment as set forth below.

## SIXTH CLAIM FOR RELIEF

(Equitable Subrogation/Indemnity – AIG Umbrella Policy)

56. AIG Canada incorporates by reference paragraphs 1 through 55 above, as though fully set forth herein.

57. The insuring provisions of the AIG Umbrella Policy provide that its coverage is excess to the "underlying insurance" provided by the AGLIC Policy upon the exhaustion of the Federal Policy.

58. Equity and good conscience require that AGLIC reimburse AIG Canada for the full amount of the AIG Umbrella Policy's contribution to the settlement of the Subrogation Action.

52563
- 10 -
**COMPLAINT**

59. Wherefore, AIG Canada prays for judgment as set forth below.

**PRAYER**

WHEREFORE, AIG Canada demands judgment against AGLIC as follows:

As to the First Claim for Relief: a judicial declaration establishing that FSSFE was insured under the AGLIC Policy with respect to the claims asserted in the Subrogation Action;

As to the Second Claim For Relief: a judicial declaration establishing that any coverage provided by the AIG Primary Policy and the AIG Umbrella Policy with respect to the Subrogation Action was and is excess to the coverage obligations of the AGLIC Policy;

As to the Third Claim for Relief: a judicial declaration establishing that the professional services exclusions bars coverage for the claims of the Subrogation Action under the AIG Primary Policy and the AIG Umbrella Policy;

As to the Fourth Claim for Relief: a judicial declaration establishing that any coverage provided by the AIG Umbrella Policy with respect to the Subrogation Action was and is, by the terms of the respective policies, excess to the coverage provided under the AGLIC Policy;

As to the Fifth Claim for Relief: a money judgment in the amount of three million five hundred thousand dollars ($3,500,000);

As to the Sixth Claim for Relief: a money judgment in the amount of one million five hundred thousand dollars ($1,500,000);

For costs of suit herein; and

For such other and further relief as the court may deem proper.

Dated: June 6, 2014                McCURDY FULLER RUETTGERS LLP


　　　　　　　　　　　　　　　　　　/s/ Robert J. Scott, Jr.
　　　　　　　　　　　　　　　　　　MARY P. McCURDY
　　　　　　　　　　　　　　　　　　ROBERT J. SCOTT, Jr.
　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　AIG COMMERCIAL INSURANCE
　　　　　　　　　　　　　　　　　　COMPANY OF CANADA

52563

- 11 -

**COMPLAINT**