UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIG COMMERCIAL INSURANCE COMPANY OF CANADA,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. 14-cv-02610-SI<br><br>**ORDER GRANTING THIRD-PARTY DEFENDANTS' MOTION TO DISMISS AND GRANTING THIRD-PARTY PLAINTIFF LEAVE TO AMEND** |
| AIG COMMERCIAL INSURANCE COMPANY OF CANADA,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>MILLENNIUM PARTNERS CALIFORNIA PROPERTY MANAGEMENT LLP; 765 MARKET STREET RESIDENTIAL OWNER'S ASSOCIATION; and DOES through 10, inclusive,<br><br>Third-Party Defendants. | |
| AND RELATED COUNTER-CLAIMS AND THIRD PARTY CLAIMS | |

Third-party defendants Millennium Partners California Property Management LLP and 765 Market Street Residential Owner's Association have moved to dismiss the complaint by third-party plaintiff AIG Commercial Insurance Company of Canada. Docket No. 37. This motion is set for hearing on January 30, 2015. Pursuant to Civil Local Rule 7−1(b), the Court determines that this matter is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the third-party defendants' motion to dismiss is GRANTED in part and DENIED in part.

# BACKGROUND

The Millennium Market Street Center is a mixed use condominium development located at 765 Market Street in San Francisco, California. AIG Canada's third-party complaint ("TPC") ¶6. Four Seasons Hotels Limited ("Four Seasons") entered into a Condominium and Property Sub-Management and Hotel Services Agreement ("Sub-Management Agreement") with Millennium Partners, the Association, the owner of the Property and the commercial association. ("Millennium"). *Id*. ¶7. Pursuant to the Sub-Management Agreement, Four Seasons assumed the responsibility for various property management functions including maintenance and repair of the common areas of the residential component. *Id*. ¶7.

The Sub-Management Agreement details the services to be provided by Four Seasons as the Sub-Manager for the Property, which include hiring, training and supervising a maintenance staff to respond to maintenance or repair requests in areas for which Millennium is responsible. *Id*. ¶8. The Sub-Management Agreement gave Four Seasons the option to employ personnel to carry out these services either as its own employees "or in the name of an Affiliate (an "Employment Affiliate")." *Id*. ¶9. Four Seasons created Four Seasons San Francisco Employees ("FSSFE") as an Employment Affiliate, within the meaning of Section 5.1(e) of the Sub-Management Agreement. *Id*. ¶ 10.

The Sub-Management Agreement obligated Four Seasons to "cause to be maintained . . . property insurance, insuring against all-risk of direct physical damage . . .; and Sub-Manager [Four Seasons], Manager [Millenium] and Owner shall be named as insured parties in all liability policies." *Id.,* ¶12. The Sub-Management Agreement also obligated Millennium to indemnify Four Seasons and FSSFE as follows:

> To the extent Sub-Manager shall not be fully covered by insurance, Manager and each Managed Condominium Association shall, . . . indemnify, exonerate and save harmless Sub-Manager against and from any and all loss, claim, damage, cost liability or expense (including reasonable attorneys' fees) arising out of an action or omission or course of action on the part of the Sub-Manager in the performance of its duties hereunder, arising out of or in connection with the operation of the Center or any component thereof . . . For purposes of this Section 16(d) the term "Sub-Manager" shall include any Employment Affiliate of Sub-Manager.

*Id.* ¶ 13.

On May 14, 2009, while FSSFE employees were performing repair work on the property's hot water system, a valve was left open resulting in the flooding of a private residential unit. *Id.* ¶16. Fireman's Fund Insurance Company, the insurer of the owner of the unit, paid for the flood loss and then sued Four Seasons and FSSFE in a subrogation action ("Fireman's Fund Action"), alleging that the defendants were negligent in failing to close or for leaving open a vent or valve on equipment that was part of the building's hot water system. *Id.* ¶17-18. The Fireman's Fund Action settled in October 2013 for payment on behalf of Four Seasons and FSSFE of $7,500,000. *Id.* ¶19.

Three insurers contributed to payment of the settlement. Millennium obtained liability insurance for the Property, through a commercial general liability policy issued by Federal Insurance Company for the policy period June 28, 2008 to June 28, 2010 ("Federal Policy"). *Id.* ¶ 20. The Federal Policy did not identify Four Seasons as an insured, *id.*, but it did provide: "Persons (other than your employees) or organizations acting as your real estate managers are insureds; but they are insureds only with respect to their duties as your real estate managers." *Id.* Federal Insurance Company defended Four Seasons and FSSFE in the Fireman's Fund Action and paid $2 million to settle that suit on their behalf. *Id.* ¶21.

Another insurer, American Guarantee & Liability Insurance Company ("American Guarantee"), issued a Commercial Umbrella Policy to Integrated Risk Facilities, Inc., a Risk Purchasing Group, for the policy period October 1, 2008 to October 1, 2009 ("American Guarantee Policy"). *Id.* ¶22. The American Guarantee Policy included Millennium and the Association as named insureds. The American Guarantee Policy did not identify Four Seasons as a named insured, *id.* ¶ 23, but it did include as an insured any person or organization qualifying as an insured on the Federal Policy. *Id.* ¶ 23. In the Fireman's Fund Action, American Guarantee took the position that only Four Seasons, and not FSSFE, was an insured under American Guarantee's policy because FSSFE was not a signatory to the Sub-Management Agreement. *Id.* ¶ 24. American Guarantee contributed $2 million to settle the Fireman's Fund Action.

AIG Canada issued a comprehensive general liability policy and a commercial umbrella

3

liability policy to Four Seasons for the policy period November 1, 2008 to November 1, 2009. *Id.* ¶25. AIG Canada paid a total of $3.5 million toward the settlement of the Fireman's Fund Action. *Id*.

On or about June 6, 2014, AIG Canada filed a lawsuit against American Guarantee seeking subrogation to recover the $3.5 million AIG Canada paid toward the Fireman's Fund Action. *Id.* ¶ 26. On October 7, 2014, AIG Canada filed the operative third-party complaint against Millennium and Association. In its complaint AIG Canada alleges that Millennium agreed in the Sub-Management Agreement to provide both insurance and indemnity to Four Seasons and FSSFE for their work performed under the Agreement, and that Millennium breached both those agreements and negligently failed to obtain insurance according to the agreement. *Id*. ¶¶ 33-50. AIG Canada alleged these breaches caused AIG Canada to pay $3.5 million to settle the Fireman's Fund Action and to expend additional sums to defend and potentially indemnify FSSFE against American Guarantee's claims. *Id*. ¶¶ 37, 43, 49. On November 20, 2014, Millennium and Association filed the instant motion to dismiss the third party complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

4

1  However, the court is not required to accept as true "allegations that are merely conclusory,
2  unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536
3  F.3d 1049, 1055 (9th Cir. 2008).

4  If the Court dismisses the complaint, it must then decide whether to grant leave to amend.
5  The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no
6  request to amend the pleading was made, unless it determines that the pleading could not possibly
7  be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)
8  (citations and internal quotation marks omitted).

**DISCUSSION**

**I.   AIG Canada's Right to Subrogation**

AIG Canada's complaint asserts a cause of action premised on the right of subrogation. Millennium contends that AIG Canada cannot meet the standards for equitable subrogation and its complaint must be dismissed. First, Millennium argues the basis for recovery in this case should be contribution rather than subrogation. MTD at 4-5. Additionally, Millennium contends that AIG Canada has failed to establish a right to equitable subrogation. *Id*. at 5-6.

**A.   Contribution or Subrogation**

Millennium argues that this case is appropriate for contribution rather than subrogation and that equitable contribution has already been accomplished. *Id*. at 5. AIG Canada did not allege contribution in its complaint and did not address this contention in its opposition.

The California Court of Appeal has noted that few legal concepts "have caused more confusion and headache for both courts and litigants than have contribution and subrogation." *American States Ins. Co. v. Nat'l Fire Ins. Co. of Hartford*, 202 Cal. App. 4th 692, 700 (2012); *Fireman's Fund Ins. Co. v. Maryland Casualty Co.*, 65 Cal. App. 4th 1279, 1291, (1998); *Herrick Corp. v. Canadian Ins.*, *Co.* 29 Cal. App. 4th 753, 756 (1994). Although both concepts are equitable in nature, they are nonetheless distinct. *Fireman's Fund*, 65 Cal. App. 4th at 1291. The rule of contribution states "where two or more insurers independently provide primary insurance

on the same risk for which they are both liable for any loss to the same insured, the insurance carrier who pays the loss or defends a lawsuit against the insured is entitled to equitable contribution from the other insurer or insurers, without regard to principles of equitable subrogation." *Id*. at 1289.  Equitable contribution "is the right to recover, not from the party *primarily* liable for the loss, but from a *co-obligor* who *shares* such liability with the party seeking contribution." *Id*. at 1293.

Here, AIG Canada is seeking recovery from Millennium not as a co-obligor but rather as the party primarily liable for the loss.  In its complaint, AIG Canada alleges that Millennium agreed to indemnify the insured (Four Seasons) for "any and all loss, claims, damages, liabilities arising out of an action or omission in connection with the performance of the services."  TPC ¶46.  AIG Canada alleges that Millennium was "primarily liable" for the losses at issue because it failed to include FSSFE as a named insured under the American Guarantee policy.  *Id*. ¶ 36.  AIG Canada's complaint seeks recovery from Millennium as the party primarily liable for the loss, and thus is a not a claim for contribution.  *Id*. at 11.

### B.     Equitable Subrogation

AIG Canada seeks to enforce its subrogation rights and recover from Millennium the $3.5 million AIG Canada paid toward the settlement of the Fireman's Fund Action on behalf of AIG Canada's insured, Four Seasons.  Subrogation is "an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid."  *Fireman's Fund*, 65 Cal. App. 4th at 1291-92.  Millennium moves to dismiss AIG Canada's claim, contending that AIG Canada failed to state sufficient facts to establish all of the requirements for its right to equitable subrogation.  MTD at 4-6.

AIG Canada alleges in its complaint that it has a contractual right of subrogation, identifying the subrogation provisions of its general and umbrella policies.  TPC ¶¶ 30, 32.  In support of its position that it may assert contractual, as opposed to equitable, subrogation, AIG Canada argues that California Court of Appeals cases have explained that subrogation "has it

6

1 source in equity and arises out of law," but can also "arise out of the contractual language of the
2 insurance policy." *Progressive West Ins. Co. v. Superior Court*, 135 Cal. App. 4th 263, 272
3 (2005); *see also Pacific Gas & Elec. Co. v. Superior Court*, 144 Cal. App. 4th 19, 23 (2006).
4 However, those cases depart from long-established (1938) California Supreme Court precedent in
5 *Meyers v. Bank of America Nat. Trust Savings Ass'n.,* which holds the party claiming any right of
6 subrogation must show "recovery being dependable upon a right in equity, and not by virtue of an
7 asserted legal right under an assignment." *Meyers*, 11 Cal. 2d 92, 97 (1938); *see also* California
8 Insurance Law Handbook § 74:3 ("Contractual subrogation is unenforceable when equity would
9 not allow subrogation in the absence of a contractual provision or assignment."). The *Meyers*
10 court stated that "one who asserts a right of subrogation, whether by virtue of an assignment or
11 otherwise, must first show a right in equity to be entitled to such subrogation, or substitution, and
12 that where such right is clearly shown by the application of equitable principles, an assignment
13 adds nothing to his right thereto." *Meyers*, 11 Cal. 2d 92, 96-97; *see also San Diego Assemblers*
14 *Inc. v. Work Comp for Less Insurance Services, Inc.*, 220 Cal. App. 4th 1363, 1368 (2013);
15 *Dobbas v. Vitas*, 191 Cal. App. 4th 1442, 1455 (2011). Therefore, AIG Canada's claim to
16 contractual subrogation alone is insufficient to establish the right of subrogation, and the Court
17 must assess whether there are sufficient facts alleged to support a right of equitable subrogation.

18 To state a claim for equitable subrogation, an insurer must allege that "the insured [here,
19 Four Seasons] suffered a loss for which the defendant [here, Millenium] is liable, either as the
20 wrongdoer whose act or omission caused the loss or because the defendant is legally responsible
21 to the insured for the loss caused by the wrongdoer," and that "justice requires that the loss be
22 entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the
23 insurer." *Fireman's Fund*, 65 Cal. App. 4th at 1292 (citations omitted). On a motion to dismiss,
24 Millennium, as the moving party, has the burden to show that AIG Canada cannot establish
25 superior equities as a matter of law. *See Interstate Fire*, 182 Cal. App. 4th at 37.

26 According to Millennium, AIG Canada's complaint alleges that FSSFE caused the flood
27 loss; thus, AGI Canada does not have superior equities because Millennium did not cause the
28 flood loss. MTD at 6, Reply at 1, 3. However, a careful reading of the complaint reveals that the

7

allegations Millennium cites do not allege that FSSFE caused the flood loss. TPC ¶¶ 16, 18. In its complaint, AIG Canada alleges that Millennium breached a contractual obligation to obtain insurance for Four Seasons and FSSFE. TPC ¶¶ 35, 36. The complaint alleges that "Millennium had an obligation to obtain insurance covering the Property as set forth in Section 5.1(i) of the Sub-Management Agreement." TPC ¶ 35. The Sub-Management Agreement states with respect to insurance:

> On behalf of and at the expense of the applicable Managed Condominium Association, from and after the completion of construction of the Center, **Sub-Manager [Four Seasons] shall cause to be maintained**, through the agent and brokers designated by Manager [Millenium] and approved by Sub-Manager and the applicable Managed Condominium Association, in such amounts and with such insurance companies as the applicable Managed Condominium Association shall approve . . . . Sub-Manager, Manager and Owner shall be named as insured parties in all liability policies. . . .

*Id.* ¶ 12 (Section 5.1(i), emphasis added). Section 16(d) of the Sub-Management Agreement, entitled "Miscellaneous," states:

> To the extent the Sub-Manager shall not be fully covered by insurance, Manager and each Managed Condominium Association shall… indemnify, exonerate and save harmless Sub-Manager against and from any and all loss, claim, damage, cost liability or expense (including reasonable attorneys' fees) arising out of an action or omission or course of action on the part of the Sub-Manager in the performance of its duties hereunder, arising out of or in connection with the operation of the Center or any component thereof . . . For purposes of this Section 16(d) the term "Sub-Manager" shall include any Employment Affiliate of Sub-Manager.

*Id.* ¶ 13.

AIG Canada alleges that Millennium obtained liability insurance pursuant to Section 5.(i) [sic - 5.1(i)] of the Sub-Management Agreement through a commercial general liability policy issued by Federal Insurance Company, but this policy did not identify Four Seasons or FSSFE as an insured, thus causing losses to Four Seasons and FSSFE. TPC ¶¶ 20, 23. Millennium argues that under the plain language of the contract, Sub-Manager Four Seasons (and not Millennium) was obligated to procure liability insurance to protect the interested entities, and thus Millennium did not breach the contract. MTD at 7. AIG Canada argues in its reply (although it did not allege in the TPC) that the Residential Condominium Management Agreement between the Association

8

and Millennium (Exhibit B to the Sub-Management Agreement[1]) states that the Association "will obtain comprehensive general liability insurance." Opp. at 12.

On the face of the complaint, AIG Canada has not alleged facts to support its claim that Millennium was to obtain general liability insurance and thus that Millenium "is legally responsible to the insured for the loss caused by the wrongdoer." *Fireman's Fund,* 65 Cal. App. 4th at 1292. This requires that the present motion to dismiss the claims based on equitable subrogation must be granted. It appears, however, that AIG Canada could amend the TPC to resolve these issues; hence, leave to amend will also be granted.

## II.   Breach of Contract

AIG Canada alleges in its complaint that Millennium breached its contractual obligation to obtain insurance and to expressly indemnify Four Seasons and FSSFE. The elements of a cause of action for breach of contract in California are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

As previously discussed, AIG Canada has not sufficiently alleged that Millennium breached a contractual agreement to provide insurance to Four Seasons. Leave to amend will be granted to allow it to do so.

As to the express indemnity claim, the contractual predicate has been alleged in the complaint but the parties differ as to its ultimate significance. AIG Canada argues that it is entitled to offer extrinsic evidence to establish that the language of the contract is reasonably susceptible to more than one meaning and that the resolution of the disputed meaning of a contract on a motion to dismiss is inappropriate. Opp. at 13. AIG Canada's complaint alleges that the

---

[1] AIG Canada did not provide the Court a copy of Exhibit B to the Sub-Management Agreement.

9

agreement requires Millennium to indemnify "where Four Seasons and FSSFE are not 'fully covered' by the insurance contemplated by the agreement." TPC ¶46. Millennium contests AIG Canada's interpretation of the term "insurance" in Section 16(d). Reply at 3. Specifically, Millennium contends that the loss is not within the meaning of the indemnification agreement because of the qualifying language "to the extent Sub-Manager shall not be fully compensated by insurance." MTD at 8.

Although the parties dispute the meaning of terms in the contract that establish obligations to purchase insurance and indemnification of Four Seasons and FSSFE, the "resolution of the disputed meaning of the contract on a motion to dismiss is inappropriate." *WPP Luxembourg Gamma Three Sarl v. Spot Runner Inc*., 655 F.3d at 1051; *see also Tessera Inc. v. UTAC (Taiwan) Corp.,* 2012 WL 1067672, at *2 (N.D. Cal. Mar. 28, 2012) ("Resolution of the contract questions in this case will likewise require consideration of various kinds of evidence…. The contract interpretation question will wait until summary judgment or trial.").

On the face of the complaint, AIG Canada has not alleged facts that Millennium was to obtain general liability insurance for Four Seasons and FSSFE and thus AIG Canada has failed to allege a claim for breach of contract. Accordingly, the Court GRANTS the motion as to this issue and GRANTS AIG Canada leave to amend.

### III. Negligence

AIG also alleges a cause of action for negligence against Millennium. "The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998). However, "conduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 515 (1994). "'[A]n omission to perform a contract obligation is never a tort, unless that omission is also an omission

of a legal duty.'" *Id.* (quoting *Jones v. Kelly*, 208 Cal. 251, 255, 280 (1929)).

AIG Canada alleges the contract imposed "a duty to use reasonable care" in "carrying out its obligation to procure insurance for the Property and to name Four Seasons and FSSFE as insureds." TPC ¶41. AIG Canada argues this obligation was "set forth in Section 5.1(i) of the Sub-Management Agreement." *Id.* ¶35. However, AIG has not alleged a breach of a legal duty independent of Millennium's alleged contractual obligation. AIG Canada's negligence claim is based entirely on Millennium's failure to adhere to its alleged contractual obligation to obtain insurance. Therefore, AIG Canada has failed to state a claim for negligence in its present third-party complaint. Because AIG Canada could allege other facts to establish this claim, the Court GRANTS Millennium's motion as to this issue and GRANTS AIG Canada leave to amend. *See Lopez v. Smith*, 203 F.3d at 1130.

## CONCLUSION

For the foregoing reasons the Court GRANTS Millennium's motion to dismiss and GRANTS AIG Canada leave to amend. AIG Canada must file an amended complaint no later than **February 16, 2015**.

**IT IS SO ORDERED**.

Dated: January 29, 2015

SUSAN ILLSTON
United States District Judge