MARY P. McCURDY (SBN 116812)
ROBERT J. SCOTT, Jr. (SBN 151775)
McCURDY FULLER RUETTGERS LLP
4300 Bohannon Drive, Suite 240
Menlo Park, California 94025
Telephone:  (650) 618-3500
Facsimile:  (650) 618-3599
E-mail:  mary.mccurdy@mccurdylawyers.com
E-mail:  robert.scott@mccurdylawyers.com

Attorneys for Plaintiff
AIG COMMERCIAL INSURANCE
COMPANY OF CANADA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIG COMMERCIAL INSURANCE COMPANY OF CANADA,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY  and DOES 1 through 10, inclusive<br><br>Defendants. | CASE NO.: 3:14-cv-02610-SI<br><br>**AIG COMMERCIAL INSURANCE COMPANY OF CANADA'S FIRST AMENDED THIRD-PARTY COMPLAINT** |
| AIG COMMERCIAL INSURANCE COMPANY OF CANADA,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>MILLENNIUM PARTNERS CALIFORNIA PROPERTY MANAGEMENT LLP;   765 MARKET STREET RESIDENTIAL OWNER'S ASSOCIATION; and DOES 1 through 10, inclusive<br><br>Third-Party Defendants. | |
| AND RELATED COUNTER-CLAIMS AND THIRD PARTY CLAIMS | |

Third-Party Plaintiff AIG Commercial Insurance Company of Canada ("AIG Canada"), on behalf of itself and no other party to this action, hereby alleges and avers pursuant to Federal Rule of Civil Procedure, Rule 14, as follows:

**PARTIES**

1. Plaintiff, counterdefendant and third-party plaintiff AIG Canada is a corporation organized and existing under the laws of the Province of Ontario, Canada with its principal place of business in Toronto, Ontario.

2. Defendant counterclaimant and third-party plaintiff American Guarantee & Liability Insurance Company ("AGLIC") is, on information and belief, a New York corporation with its principal place of business in Schaumberg, Illinois.

3. Third-party defendant Millennium Partners California Property Management LLC ("Millennium") is a California corporation.

4. Third-party defendant The 765 Market Street Residential Owners Association ("Residential Association") is a California non-profit mutual benefit corporation.

5. Third-party defendant FS San Francisco Employment, Inc. ("FSSFE") is, on information and belief, a California corporation with its principal place of business in San Francisco, California.

**GENERAL ALLEGATIONS**

A.   The Sub-Management Agreement

6. The Millennium Market Street Center is a mixed use condominium development located at 765 Market Street in San Francisco, California ("Property"). The Property consists of approximately 142 luxury residential condominiums together with a common area. Additionally, there are commercial components that consist of six commercial condominium units comprised of two hotel units, one sports club, one retail unit, one museum unit, and one parking unit.

7. On October 1, 2001, Four Seasons Hotels Limited ("Four Seasons" or "Sub-Manager") entered into a Condominium and Property Sub-Management and Hotel Services Agreement ("Sub-Management Agreement") with Millennium, the Residential Association, The Millennium Market Street Center Association ("Center Association"), and the owner of the

1  Property. A true and correct copy of the Sub-Management Agreement is attached hereto as
2  Exhibit 1 and incorporated herein by reference.

3      8.    Also on October 1, 2001, the Center Association and Millennium entered into a
4  Center Management Agreement, a copy of which is annexed as Exhibit A to the Sub-Management
5  Agreement.

6      9.    Further on October 1, 2001, the Residential Association and Millennium entered
7  into a Residential Condominium Management Agreement ("Residential Management
8  Agreement"), a copy of which is annexed as Exhibit B to the Sub-Management Agreement.

9      10.    The Center Management Agreement and the Residential Management Agreement
10 are collectively referred to in the Sub-Management Agreement as the "Master Management
11 Agreements." The Residential Association and the Center Association are referred to in the Sub-
12 Management Agreement as "Managed Condominium Associations."

13     11.    Section 2(a) of the Sub-Management Agreement provides, in relevant part:

> Subject to and upon the terms and conditions herein set forth, Manager [Millennium] appoints Sub-Manager as its sub-manager, during the Term (as defined herein), to supervise and otherwise perform such of the duties and obligations for which Manager is responsible under the Master Management Agreements which are specifically delegated and/or assigned to Sub-Manager pursuant to Section 5.1 of this Agreement in connection with the operation and management of the Center Association Common Areas and the Residential Component, and Sub-Manager hereby accepts such appointment.

19     12.    Section 5 of the Sub-Management Agreement, entitled "Services Performed,"
20 identifies the services to be provided by Four Seasons as the Property Sub-Manager. Section
21 5.1(b) of the Sub-Management Agreement provides, in relevant part:

> Common Area Maintenance and Repairs. Sub-Manager shall hire, train, supervise and discharge a maintenance staff which will promptly respond to any maintenance or repair request in respect of the Center Association common areas or the Residential Common Areas that is the responsibility of [Millennium] under the Master Management Agreements. Through employees hired pursuant to Section 5.1(e), … cause the Center Association Common Areas and Residential Common Areas to be repaired, restored, cleaned, … or maintained in such condition as may be deemed advisable by Sub-Manager, including, without limitation, with respect to the Center Association Common Areas and Residential Common Areas, **plumbing**, steam fitting, carpentry, elevators, painting and plastering … (emphasis added).

13. The Sub-Management Agreement, at Section 5.1(e), provides that Four Seasons has certain options with respect to employing personnel to carry out the duties assumed by Four Seasons in the Sub-Management Agreement. Four Season's options included employing personnel in the name of an "Employment Affiliate":

> Hire, train, discharge and supervise the work of all persons necessary to be employed in order to enable Sub-Manager to perform its obligations under this Agreement; . . . Sub-Manager shall have the option to employ persons on behalf of each Managed Condominium Association in its own name as employees of the Sub-Manager (or in the name of an Affiliate (an "Employment Affiliate")) and not as employees of any particular Managed Condominium Association or of the Hotel, provided that all expenses of such employees shall be borne by the Managed Condominium Associations in accordance with the preceding provisions of this Section 5.1(e); ….

14. FSSFE is an "Employment Affiliate," within the meaning of Section 5.1(e) of the Sub-Management Agreement.

15. Section 5.1(e) further provides that "Sub-Manager shall not be responsible to Manager, or any Managed Condominium Association or Hotel Owner for any loss, damages or liability in connection with such employees ...." (Emphasis added.)

16. The Sub-Management Agreement provides with respect to insurance, at Section 5.1(i), in relevant part as follows:

> Insurance. On behalf of and at the expense of the applicable Managed Condominium Association, from and after the completion of construction of the Center, Sub-Manager shall cause to be maintained, through the agent and brokers designated by Manager and approved by Sub-Manager and the applicable Managed Condominium Association, … **public liability**, … and such other insurance as each Managed Condominium Association, Manager and Sub-Manager shall deem necessary for the protection of the interests of the Managed Condominium Associations, Manager and Sub-Manager; and Sub-Manager, Manager and Owner shall be named as insured parties in all liability policies. . . .

17. Section 2 of the Center Agreement is entitled "Duties of Manager" and provides, in relevant part:

> The duties of the Manager shall be generally to operate and manage the Center and to perform all services reasonably necessary for the care, protection, maintenance and operation of the Center and shall include, but not be limited to, the following:
>
> * * * * *

    g. On behalf of and at the expense of the Center Association cause to be effected and maintained through agents and brokers approved by the Center Association … **public liability** … and such other insurance as the Center Association and Manager shall deem necessary for the protection of the Center Association and Manager, and the Manager shall be named as an insured party in all liability policies…

18. Section 4 of the Center Agreement is entitled "Indemnification: Reimbursement" and provides in relevant part that: "The Center Association will obtain comprehensive general liability insurance (with limits acceptable to Manager in its reasoned judgment) … [and] will include Manager as a party insured under the general liability policy …"

19. Section 2 of the Residential Management Agreement is entitled "Duties of Manager" and provides, in relevant part:

> The duties of the Manager shall be generally to operate and manage the Residential Project and to perform all services reasonably necessary for the care, protection, maintenance and operation of the Residential Project and shall include, but not be limited to, the following:
>
> * * * * *
>
>  g. On behalf of and at the expense of the Residential Association cause to be effected and maintained through agents and brokers approved by the Residential Association … **public liability** … and such other insurance as the Residential Association and Manager shall deem necessary for the protection of the Residential Association and Manager, and the Manager shall be named as an insured party in all liability policies…

20. Section 4 of the Residential Management Agreement is entitled "Indemnification: Reimbursement" and provides in relevant part that: "The Residential Association will obtain comprehensive general liability insurance (with limits acceptable to Manager in its reasoned judgment) … [and] will include Manager as a party insured under the general liability policy …"

21. Section 16(d) of the Sub-Management Agreement, entitled "Miscellaneous," provides for indemnification of Four Seasons and FSSFE in relevant part as follows:

> To the extent Sub-Manager shall not be fully covered by insurance, Manager and each Managed Condominium Association shall, . . . indemnify, exonerate and save harmless Sub-Manager against and from any and all loss, claim, damage, cost liability or expense (including reasonable attorneys' fees) arising out of an action or omission or course

of action on the part of the Sub-Manager in the performance of its duties hereunder, arising out of or in connection with the operation of the Center or any component thereof . . . For purposes of this Section 16(d) the term "Sub-Manager" shall include any Employment Affiliate of Sub-Manager.

22. Section 16(e) of the Sub-Management Agreement further provides:

In the performance of its duties hereunder, Sub-Manager shall act solely as agent of Manager and the Managed Condominium Associations. . . All debts and liabilities to third persons required or permitted to be incurred by Sub-Manager pursuant to and in accordance with this Agreement shall be the debts and liabilities of the Managed Condominium Associations only, and Sub-Manager shall not be liable by reason of its activities hereunder. . .

23. Section 16(f) of the Sub-Management Agreement further provides:

Personnel engaged by Sub-Manager on behalf of the Center or the Residential Component pursuant to and in accordance with this Agreement, including any employee of Sub-Manager or employee of a Managed Condominium Association hired by Sub-Manager, shall be acting as the agent of the applicable Managed Condominium Association.

B. The Flooding Incident and Subrogation Lawsuit

24. On May 14, 2009, FSSFE employees, in their capacities as employees and/or agents of the Residential Association, were performing repair work on the Center's hot water system which involved the draining of water from the entire building. During this repair work, a valve was left open resulting in the flooding of a private residential unit, Penthouse 3D, which sustained substantial water damage ("Flood Incident").

25. At the time of the Flood Incident, Grand Penthouse, LLC, the titled owner of Penthouse 3D, was insured by Fireman's Fund Insurance Company for loss and damage of the type suffered as a result of the water system repair work.

26. On September 22, 2009, Fireman's Fund filed a complaint for negligence against Does 1-50, as San Francisco County Superior Court, Case no. CSC-09-492760 ("Subrogation Action"). The complaint was amended in February, 2010 to substitute Four Seasons as Doe No. 1. On August 3, 2010, the complaint was again amended to substitute FSSFE as Doe No. 50. The complaint alleged that the defendants were negligent in failing to close, or in leaving open, a vent or valve on certain equipment that was part of the building's hot water system and was located on the roof of 765 Market Street. Fireman's Fund alleged that it had paid or would have to pay Grand Penthouse, LLC for the flood loss.

27. The Subrogation Action settled in or about October 2013 for payment on behalf of Four Seasons and FSSFE of seven million five hundred thousand dollars ($7,500,000).

C. <u>The Insurance</u>

28. Millennium obtained liability insurance for the Property, pursuant to its obligations under § 2.g. of the Residential Management Agreement, under a commercial general liability policy issued by Federal Insurance Company ("Federal"), policy no. 7959-55-89, for the policy period June 28, 2008 to June 28, 2010 ("Federal Policy"). The policy was obtained through "Protector Purchasing Group" and the named insureds are identified on "Certificates of Insurance." "Millennium Partners Management" is the first named insured on Certificate no. 7959-55-89 – 15376, a true and correct copy of which is attached hereto as Exhibit 2 ("Millennium Certificate"). The Residential Association is identified as named insured number 13 on Certificate no. 7959-55-89 – 34695, a true and correct copy of which is attached hereto as Exhibit 3 ("Association Certificate"). Although each of the Certificates identifies a number of Millennium-related entities, neither Four Seasons nor FSSFE is identified as a named insured on either Certificate in violation of the requirements of the Sub-Management Agreement.

29. The Federal Policy did, however, include as an "insured":

> Persons (other than your employees) or organizations acting as your real estate managers are insureds; but they are insureds only with respect to their duties as your real estate managers.

30. Federal accepted the defense of Four Seasons and FSSFE in the Subrogation Action.

31. Federal paid the full $1 million "per occurrence" limits available under both the Millennium Certificate and the Association Certificate (total: $2 million) toward the settlement of the Subrogation Action.

32. AGLIC issued Commercial Umbrella Policy no. AUC 9007010-05 to Integrated Risk Facilities, Inc., a Risk Purchasing Group, for the policy period 10/1/08-10/1/09 ("AGLIC Policy"). The AGLIC Policy has a $25M occurrence/aggregate limit.

33. Millennium and the Residential Association are named insureds on the AGLIC Policy pursuant to Certificate no. AUC 9007010-05-30143, a true and correct copy of which is

attached hereto as Exhibit 4.  Despite the requirement in the Sub-Management Agreement that Four Seasons and FSSFE be named as an insured on the AGLIC Policy, the AGLIC Policy did not identify Four Seasons and FSSFE as named insureds.  The AGLIC Policy does, however, provide that any person or organization qualifying as an insured on the Federal Policy is an insured on the AGLIC Policy.

34. AIG Canada issued comprehensive general liability policy no. 1676436 to Four Seasons Holdings Inc. and Four Seasons Hotels Limited for the policy period November 1, 2008 to November 1, 2009 ("AIG Primary Policy").  The AIG Primary Policy contains a $2 million per occurrence limit of liability with respect to property damage.  AIG Canada issued commercial umbrella liability policy no. BE 1258612 to Four Seasons Holdings, Inc. and Four Seasons Hotels Ltd. for the policy period November 1, 2008 to November 1, 2009 ("AIG Umbrella Policy").  AIG Canada paid a total of $3.5 million toward the settlement of the Subrogation Action.

D. <u>The Coverage Litigation</u>

35. On or about June 6, 2014, AIG Canada filed the instant lawsuit against AGLIC for contribution and subrogation.  AIG Canada's claims were based in part on the facts that the Sub-Management Agreement and Master Management Agreements required that Millennium obtain insurance to protect the interests of Four Seasons, that the Sub-Management Agreement specifically provides that the services identified in Section 5.1 may be performed by an Employment Affiliate such as FSSFE, that the Sub-Management Agreement provides that in performing the services required thereunder FSSFE acts as the agent of the Association and Four Seasons shall not be liable for any "loss, damages or liability in connection" with the work of FSSFE, and that the obligation of the Association and Millennium to defend and indemnify Four Seasons specifically extends to FSSFE as the Employment Affiliate.  AIG Canada further contends that FSSFE is an insured on the AGLIC Policy and the AGLIC's equitable position is substantially inferior to AIG Canada's equitable position.

36. On or about July 28, 2014, AGLIC filed a third-party complaint against FSSFE alleging causes of action for indemnity, allocation and declaratory relief.  Without admitting the allegations therein and specifically denying that AGLIC's third-party complaint has any merit

whatsoever, AIG Canada incorporates by reference AGLIC's third-party complaint. AGLIC contends that is subrogated by contract to the rights of Four Seasons for indemnity and contribution as against FSSFE. AGLIC seeks to recover the $2 million that it paid toward the settlement of the Subrogation Action from FSSFE.

37. On information and belief, AIG Canada alleges that it may be obligated to indemnify FSSFE for recovery, if any, obtained by AGLIC on its third-party complaint.

38. The AIG Primary Policy includes an "Other Insurance" condition that provides, in relevant part:

> The Insurers shall not be liable if, at the time of an accident or occurrence covered by this Policy there is any other insurance which would have attached if this insurance had not been effected, except this policy will apply only as excess and in no event as contributing insurance and then only after all such other insurance has been exhausted.

39. The AIG Primary Policy includes a "Subrogation" condition that provides, in relevant part:

> In the event of any payment made under this Policy the Insurers shall be subrogated to the extent of such payment to all of the "Insured's" rights of recovery against any third party …

40. The AIG Umbrella Policy includes an "other insurance" condition providing that "If other valid and collectible insurance with any other insurer is available to the Insured covering a loss also covered hereunder, this insurance shall be excess of, and shall not contribute with such other insurance."

41. Condition 18 on the AIG Umbrella Policy, entitled "Transfer of Rights to Recovery," provides in relevant part:

> If any Insured has rights to recover all or part of any payment the Company has made under this policy, those rights are transferred to the Company. The Insured must do nothing after loss to impair these rights and must help the Company enforce them.

**FIRST CLAIM FOR RELIEF**

(Breach of Contract against Millennium and the Residential Association)

42. AIG Canada incorporates by reference paragraphs 1 through 41, above, as though fully set forth herein.

43. By contributing $3.5 million to the settlement of the Subrogation Action, AIG Canada itself became subrogated to Four Seasons' and FSSFE's rights, whether in tort or contract, against any party legally responsible to Four Seasons and FSSFE for the loss.

44. Pursuant to Section 2, paragraph g. of the Residential Management Agreement, Millennium's duties and obligations included: "On behalf of and at the expense of the Residential Association cause to be effected and maintained … public liability" insurance. Similarly, the Residential Association was obligated by the terms of the Residential Management Agreement to "obtain comprehensive general liability insurance …" Section 5.1(d) of the Sub-Management Agreement requires that "Sub-Manager … shall be named as insured parties in all liability policies."

45. Millennium and the Residential Association breached their obligations by failing to obtain insurance naming Four Seasons, FSSFE, and its subsidiary or affiliated companies as insureds with respect to their operations as property manager at the Property on the Federal Policy and the AGLIC Policy.

46. Under the terms of the Sub-Management Agreement and the exhibits thereto, Four Seasons and FSSFE were entitled to be insured, at the expense of the Residential Association, for liabilities arising out of Four Seasons' and FSSFE's operations as Sub-Manager of the Property, including for liabilities such as the Flood Incident and the Subrogation Action.

47. As a result Millennium's breach of the Sub-Management Agreement as aforesaid, AIGLIC claimed that FSSFE was not an insured under the AGLIC Policy. Further, AGLIC seeks by way of its third-party complaint a $2 million judgment against FSSFE for which AIG Canada may have to indemnify FSSFE. If FSSFE had been named as an insured under the AGLIC Policy, AGLIC could not pursue subrogation against FSSFE and AIG Canada would not be forced to expend monies to defend and potentially indemnify FSSFE against AGLIC's claims.

48. As a further proximate result of Millennium's and the Residential Association's breach of the Sub-Management Agreement, AIG Canada became obligated to protect its insureds and paid $3.5 million for the Subrogation Action and the Flood Incident, fortuities that Millennium and the Residential Association had contracted to insure against as part of the consideration for

Four Seasons entering into the Sub-Management Agreement.

49. Wherefore, third-party plaintiff AIG Canada prays for judgment as set forth below.

## SECOND CLAIM FOR RELIEF

(Negligence against Millennium and the Residential Association)

50. AIG Canada incorporates by reference paragraphs 1 through 49, above, as though fully set forth herein.

51. In procuring liability insurance for the Property, Millennium and the Residential Association assumed a duty of care to Four Seasons and FSSFE to ensure that they were named as insured parties for the protection of their interests.  Millennium and the Residential Association had a duty to use reasonable care to ensure that such insurance as they obtained adequately and properly protected the interests of Four Seasons and FSSFE against losses such as the Flood Incident and the Subrogation Action.

52. Millennium and the Residential Association breached their duties of care to Four Seasons and FSSFE by failing to obtain insurance for the Property that adequately protected the interests of Four Seasons and FSSFE and failing to ensure that Four Seasons, FSSFE, and its subsidiary or affiliated companies were included as insureds with respect to their operations as property manager at the Property on the Federal Policy and the AGLIC Policy.

53. As a result Millennium's breach of its duty of care as aforesaid, AGLIC claimed that FSSFE was not an insured under the AGLIC Policy.  Further, AGLIC seeks by way of its third-party complaint a $2 million judgment against FSSFE for which AIG Canada may have to indemnify FSSFE.  If FSSFE had been named as an insured under the AGLIC Policy, AGLIC could not pursue subrogation against FSSFE, thereby forcing AIG Canada to expend monies to defend and potentially indemnify FSSFE against AGLIC's claims.

54. As a further proximate result of Millennium's and the Residential Association's breach of their duty of care, AIG Canada became obligated to protect its insureds and paid $3.5 million for the Subrogation Action and the Flood Incident, fortuities that Millennium and the Residential Association had assumed a duty to insure against when they procured the Federal Policy and the AGLIC Policy.

55. Wherefore, third-party plaintiff AIG Canada prays for judgment as set forth below.

## THIRD CLAIM FOR RELIEF

(Express Indemnity against Millennium and the Residential Association)

56. AIG Canada incorporates by reference paragraphs 1 through 55, above, as though fully set forth herein.

57. The Sub-Management Agreement requires Millennium and the Association, where Four Seasons and FSSFE are not "fully covered" by the insurance contemplated by the agreement, to "indemnify, exonerate and save harmless" Four Seasons and FSSFE against any and all loss, claims, damages, liabilities arising out of any act or omission in connection with the performance of the services arising out of or in connection with the residential component including, but not limited to, the residential common areas.

58. The Sub-Management Agreement further states that in carrying out its activities thereunder, Four Seasons shall act solely as the agent of Millennium and the Residential Association and all "liabilities to third persons" shall be the liabilities of the Residential Association only. The Sub-Management Agreement further states that FSSFE, as personnel engaged by Four Seasons in accordance with the Sub-Management Agreement, is at all times acting as the agent of the Residential Association and all expenses of FSSFE's work "shall be borne by" the Residential Association. The Sub-Management Agreement further provides that Four Seasons "shall not be responsible … for any loss, damages or liability" in connection with FSSFE's work pursuant to the Sub-Management Agreement.

59. By virtue of the foregoing provisions of the Sub-Management Agreement, Millennium and the Association became obligated to indemnify and hold harmless Four Seasons and FSSFE from and against any and all claims, liability and/or damages arising from the Flood Incident and the Subrogation Action including, but not limited to, any prospective recovery by AGLIC on its third-party complaint against FSSFE.

60. By contributing $3.5 million to the settlement of the Subrogation Action, AIG Canada itself became subrogated to Four Seasons' and FSSFE's rights of indemnity from Millennium and the Association. To the extent that AGLIC recovers any sums against FSSFE for

which AIG Canada must indemnify FSSFE, AIG Canada will be subrogated to FSSFE's right of indemnity against Millennium and the Association with respect to those sums.

61. Wherefore, third-party plaintiff AIG Canada prays for judgment as set forth below.

**PRAYER**

As to the First Claim for Relief: a money judgment in the amount of three million five hundred thousand dollars ($3,500,000) and a further money judgment in the amount, if any, payable by AIG Canada to defend and indemnify FSSFE against the third-party complaint filed by AGLIC;

As to the Second Claim for Relief: a money judgment in the amount of three million five hundred thousand dollars ($3,500,000) and a further money judgment in the amount, if any, payable by AIG Canada to defend and indemnify FSSFE against the third-party complaint filed by AGLIC;

As to the Third Claim for Relief: a money judgment in the amount of three million five hundred thousand dollars ($3,500,000) and a further money judgment in the amount, if any, payable by AIG Canada to defend and indemnify FSSFE against the third-party complaint filed by AGLIC;

For costs of suit herein; and

For such other and further relief as the court may deem proper.

Dated: February 17, 2015           McCURDY FULLER RUETTGERS LLP

/s/Robert J. Scott, Jr.
ROBERT J. SCOTT, Jr.
Attorneys for Plaintiff, Counterdefendant and Third-Party Plaintiff
AIG COMMERCIAL INSURANCE COMPANY OF CANADA

# CERTIFICATE OF SERVICE
*AIG Canada v. American Guarantee*
**United States Northern District Court**
**Case No. 3:14-cv-02610-SI**

I am a citizen of the United States. My business address is 4300 Bohannon Drive, Suite 240, Menlo Park, CA 94025. I am employed in the county of San Mateo where this service occurs. I am over the age of 18 years, and not a party to the within cause. I am readily familiar with my employer's normal business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.

On the date set forth below, following ordinary business practice, I served a true copy of the foregoing document(s) described as:

**AIG COMMERCIAL INSURANCE COMPANY OF CANADA'S FIRST AMENDED THIRD-PARTY COMPLAINT**

Addressed to the following recipients:

James R. Tenero
Sheryl W. Leichenger
Christopher C. Ranck
SELMAN BREITMAN, LLP
33 New Montgomery Street, 6th Floor
San Francisco, CA 94105

\_\_\_\_ (BY MAIL) I caused such envelope(s) with postage paid thereon fully prepaid to be placed in the United States mail at Menlo Park, California.

 X   **(BY ELECTRONIC FILING AND SERVICE) with the Clerk of the Court using the CM/ECF System:** in accordance with the F.R.C.P. 5(b)(2)(D) and the above Court's Local Rules, I electronically filed the foregoing with the Clerk of the Court for the United States District Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system:

\_\_\_\_ (BY OVERNIGHT DELIVERY) I caused such envelope(s) to be delivered to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to be served.

 X   (Federal) I declare under the penalty of perjury under the laws of the United States that the above is true and correct.

Executed on February 17, 2015 at Menlo Park, CA.

/s/Cat Smith
Cat Smith

53203

- 2 -
**CERTIFICATE OF SERVICE**