UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIG COMMERCIAL COMPANY OF CANADA,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY, et al.,<br><br>　　　　　Defendants. | Case No. 14-cv-02610-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THIRD-PARTY DEFENDANTS' MOTION TO DISMISS THIRD-PARTY PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| AIG COMMERCIAL INSURANCE COMPANY OF CANADA,<br><br>　　　　　Third-Party Plaintiff,<br>　　v.<br><br>MILLENNIUM PARTNERS CALIFORNIA PROPERTY MANAGEMENT LLP; 765 MARKET STREET RESIDENTIAL OWNER'S ASSOCIATION; and DOES through 10, inclusive,<br><br>　　　　　Third-Party Defendants. | |
| AND RELATED COUNTER-CLAIMS AND THIRD PARTY CLAIMS | |

Third-party defendants Millennium Partners California Property Management LLP and 765 Market Street Residential Owner's Association have moved to dismiss the first amended complaint by third-party plaintiff AIG Commercial Insurance Company of Canada. Docket No. 67. This motion is set for hearing on April 24, 2015. Pursuant to Civil Local Rule 7–1(b), the

1 Court determines that this matter is appropriate for resolution without oral argument, and
2 VACATES the hearing. For the reasons set forth below, the third-party defendants' motion to
3 dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

The Millennium Market Street Center ("the property") is a mixed use condominium development located at 765 Market Street in San Francisco, California. AIG Canada's first amended third-party complaint ("FAC") ¶ 6. On October 1, 2001, Four Seasons Hotels Limited ("Four Seasons") entered into a Condominium and Property Sub-Management and Hotel Services Agreement ("Sub-Management Agreement") with Millennium Partners ("Millennium"), the 765 Market Street Residential Association ("the Residential Association"), the Millennium Market Street Center Association ("the Center Association"), and the owner of the Property. *Id*. ¶7. Also on October 1, 2001, the Center Association and Millennium entered into a Center Management Agreement. *Id*. ¶ 8. The Residential Association and Millennium also entered into a Residential Condominium Management Agreement ("the Residential Management Agreement") on October 1, 2001. *Id*. ¶ 9.

The Sub-Management Agreement details the services to be provided by Four Seasons as the Sub-Manager for the Property. These include hiring, training, supervising and discharging maintenance staff to respond to any maintenance or repair requests in areas for which Millennium is responsible. *Id*. ¶ 12. The Sub-Management Agreement gave Four Seasons the option to employ personnel to carry out these services either as its own employees "or in the name of an Affiliate (an 'Employment Affiliate')." *Id*. ¶ 13. Four Seasons created Four Seasons San Francisco Employees ("FSSFE") as an Employment Affiliate, within the meaning of Section 5.1(e) of the Sub-Management Agreement. *Id*. ¶ 14.

On May 14, 2009, while FSSFE employees were performing repair work on the property's hot water system, a valve was left open resulting in the flooding of a private residential unit. *Id.* ¶ 24. Fireman's Fund Insurance Company, the insurer of the owner of the unit, paid for the flood loss and then sued Four Seasons and FSSFE in a subrogation action ("Fireman's Fund

1  Action"), alleging that the Four Seasons defendants were negligent in failing to close or for
2  leaving open a vent or valve on equipment that was part of the building's hot water system. *Id.* ¶¶
3  24-25.  The Fireman's Fund Action settled in October 2013 for payment of $7,500,000 by three
4  insurers on behalf of Four Seasons and FSSFE. *Id.* ¶ 27.

The insurance contributions were as follows:

--**Federal Policy**:  Millennium obtained liability insurance for the Property, through a commercial general liability policy issued by Federal Insurance Company for the policy period June 28, 2008 to June 28, 2010 ("Federal Policy"). *Id.* ¶ 28.  The Federal Policy did not identify Four Seasons as an insured, *id.*, but it did provide: "Persons (other than your employees) or organizations acting as your real estate managers are insureds; but they are insureds only with respect to their duties as your real estate managers." *Id.*  Federal Insurance accepted defense of Four Seasons and FSSFE in the Fireman's Fund Action. *Id.* ¶ 30.  Federal Insurance paid a total of $2 million toward the settlement of the Fireman's Fund Action. *Id.* ¶ 31.

--**American Guarantee Policy**:  Another insurer, American Guarantee & Liability Insurance Company ("American Guarantee"), issued a Commercial Umbrella Policy to Integrated Risk Facilities, Inc., a Risk Purchasing Group, for the policy period October 1, 2008 to October 1, 2009 ("American Guarantee Policy"). *Id.* ¶ 32.  The American Guarantee Policy included Millennium and the Residential Association as named insureds. *Id.* ¶ 33.  The American Guarantee Policy did not identify Four Seasons as a named insured, *id.*, but it did include as an insured any person or organization qualifying as an insured on the Federal Policy. *Id.*

--**AIG Canada**:  AIG Canada issued a comprehensive general liability policy and a commercial umbrella liability policy to Four Seasons for the policy period November 1, 2008 to November 1, 2009. *Id.* ¶ 34.  AIG Canada paid a total of $3.5 million toward the settlement of the Fireman's Fund Action. *Id.*

On or about June 6, 2014, AIG Canada filed a lawsuit against American Guarantee seeking subrogation to recover the $3.5 million AIG Canada paid toward the Fireman's Fund Action. *Id.* ¶ 35.  On October 7, 2014, AIG Canada filed its third-party complaint against Millennium and Association alleging Millennium agreed in the Sub-Management Agreement to

3

1   provide both insurance and indemnity to Four Seasons and FSSFE for their work performed under
2   the Agreement, and that Millennium breached both those agreements and negligently failed to
3   obtain insurance according to the agreement. Docket No. 27. Millennium and the Residential
4   Association (together, "Millennium") moved to dismiss the complaint, which the Court did by
5   order dated January 29, 2015. Docket No. 56. The Court also granted AIG Canada leave to
6   amend its third-party complaint. *Id.*

7   AIG Canada filed its first amended third-party complaint on February 17, 2015. Docket
8   No. 65. Millennium again moves to dismiss AIG Canada's complaint pursuant to Federal Rule of
9   Civil Procedure 12(b)(6). Docket No. 67.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly

4

be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

In its first amended third-party complaint, AIG Canada alleges claims for breach of contract, express indemnity, and negligence. Millennium moves to dismiss all three claims.

**I.   Breach of Contract**

The first claim of AIG Canada's amended complaint is for breach of contract against Millennium. FAC ¶ 42. AIG Canada alleges that because of its contribution of $3.5 million toward the settlement of the Fireman's Fund Action against the Four Seasons entities, it is subrogated to Four Seasons' and FSSFE's rights against any party legally responsible for the loss. *Id.* ¶ 43. It then asserts that the Four Seasons entities had a contractual right to have Millennium obtain insurance naming FSSFE as an insured; that Millennium did not do so; and that some or all of AIG Canada's $3.5 million payment was caused by the breach. Millennium moves to dismiss AIG Canada's breach of contract claim.

The elements of a cause of action for breach of contract in California are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty v. Goldman*, 51 Cal. 4th 811, 821 (2011).

AIG Canada cites Section 2(g) of the Residential Management Agreement (between the Residential Association and Millennium) and Section 5.1(d) [sic - 5.1(i)] of the Sub-Management Agreement (between Four Seasons and Millennium) as the relevant contract terms. Specifically, AIG Canada alleges Millennium was obligated by the terms of the Residential Management Agreement to obtain comprehensive general liability insurance; and that the Sub-Management Agreement required that Four Seasons — the sub-manager — be named as insured in all liability policies. FAC ¶ 45. In fact, the Four Seasons entities were not named as insureds on any of the insurance Millennium obtained. This, AIG Canada argues, amounts to the breach of contract.

5

Millennium argues that AIG Canada has failed to state a claim for breach of contract to obtain insurance because Millennium had no obligation to obtain insurance for Four Seasons or FSSFE. Millennium argues that the Sub-Management Agreement required Four Seasons as sub-manager to assume obligations of Millennium, as manager, to procure liability insurance to protect the interests of the Residential Association, the Center Association, the manager and itself as sub-manager. Motion at 6. The Court agrees.

Full copies of the relevant agreements were not attached to the original third party complaint, but the Sub-Management Agreement, Residential Management Agreement, and Center Management Agreement are appended as Exhibit 1 to AIG Canada's amended complaint and are referenced and quoted throughout. Docket No. 65-1, Ex. 1. The Court will consider not only the allegations contained in the amended complaint but also the exhibits attached to the complaint. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.").

Section 5.1(i) of the Sub-Management Agreement[1] states that the sub-manager (Four Seasons) will provide certain services, the performance of which are delegated to the sub-manager by the manager (Millennium):

> <u>Insurance</u>. On behalf of and at the expense of the applicable Managed Condominium Association . . . **Sub-Manager shall cause to be maintained** . . . property insurance, insuring against all-risk of direct physical damage, including earthquake (if reasonably available and affordable), public liability, elevator liability, boiler, worker's compensation, and such other insurance as each Managed Condominium Association, Manager and Sub-Manager shall deem necessary for the protection of the interests of the Managed Condominium Associations, Manager and Sub-Manager; and Sub-Manager, Manager, and Owner shall be named as insured parties in all liability policies.

Docket No. 65-1, Ex. 1 Sub-Management Agreement § 5.1(i) (emphasis added).[2]

---

[1] AIG Canada cites Section 5.1(d) of the Sub-Management Agreement, which pertains to "Budgets." It appears that AIG Canada intends to cite Section 5.1(i) which addresses "Insurance." Docket No. 65-1, Ex. 1 at 15.

[2] Paragraph 44 of the FAC alleges that Millennium's duties included getting liability insurance, and further alleges: "Section 5.1(d) [sic - 5.1(i)] of the Sub-management Agreement requires that

Millennium contends that this contractual term makes clear that Four Seasons as sub-manager was obligated to procure liability insurance. Motion at 6.

AIG Canada argues that Section 2 of the Residential Management Agreement required Millennium to obtain comprehensive general liability insurance, and this duty could not have possibly been delegated to Four Seasons as sub-manager. Opp. at 9-10. Section 2(g) of the Residential Management Agreement states that the Manager (Millennium) will:

> On behalf of and at the expense of the Residential Association cause to be effected and maintained . . . public liability . . . and such other insurance as the Residential Association and Manager shall deem necessary for the protection of the interests of the Residential Association and Manager; and the Manager shall be named as an insured party in all liability policies . . . .
> Docket No. 65-2.

Taken together, the terms of the Agreements do not support AIG Canada's assertion that the Sub-Management agreement obligated Millennium to obtain liability insurance that named Four Seasons and FSSFE as insureds. The allegation in Paragraph 44 of the FAC, to the effect that the Sub-Management Agreement requires the Sub-Manager be named as insured in all liability policies, neglects to note that the same agreement requires the Sub-Manager -- not Millennium -- to "cause to be maintained" the liability insurance.

The contract terms do not support AIG Canada's breach of contract claim. The Court must therefore GRANT Millennium's motion as to this claim.

## II. Express Indemnity

AIG Canada alleges a claim against Millennium for express indemnity. FAC ¶ 56. "An indemnitee seeking to recover on an agreement for indemnification must allege the parties' contractual relationship, the indemnitee's performance of that portion of the contract which gives rise to the indemnification claim, the facts showing a loss within the meaning of the parties' indemnification agreement, and the amount of damages sustained." *Four Star Electric, Inc. v. F &*

---

"Sub-Manager . . . shall be named as insured parties in all liability policies." The FAC omits the portion of Section 5.l(i) which provides that "Sub-Manager" -- ie, the Four Seasons entities -- shall obtain the insurance.

*H Construction*, 7 Cal. App. 4th 1375, 1380 (Cal. App. 1992). AIG Canada's claim for express indemnity is premised upon Millennium's alleged contractual obligations, and is therefore contingent on the breach of contract claim. Because AIG Canada has failed to state a claim against Millennium for breach of contract, the express indemnity claim similarly fails. Accordingly, Millennium's motion as to this claim is GRANTED.

**III.  Negligence**

AIG Canada also alleges that in procuring liability insurance for the property, "Millennium and the Residential Association assumed a duty of care to Four Seasons and FSSFE to ensure that they were named as insured parties for the protection of their interests." FAC ¶ 51. The complaint alleges that Millennium had a duty to use reasonable care to ensure that insurance obtained adequately and properly protected the interests of Four Seasons and FSSFE against losses like the flood incident and subrogation action. *Id*. Millennium moves to dismiss this claim, arguing that it owed no such duty.

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998). In its opposition, AIG Canada suggests that Millennium voluntarily undertook an obligation to procure insurance, thereby creating a duty of care outside its alleged contractual obligation to insure Four Seasons and FSSFE. Opp. at 13. The Court finds that AIG Canada has stated a claim for negligence.[3] Whether AIG Canada will be able to provide factual evidence to prove its claim is not yet known, and at this pleading stage the Court cannot say that AIG Canada's claim fails. Accordingly, the motion to dismiss this claim is DENIED.

---

[3] Millennium has also argued that AIG Canada cannot meet the requirements for subrogation, as a matter of law. In particular, Millennium contends AIG Canada has failed to plead that Millennium is primarily liable for the loss and that AIG Canada's equities are superior to those of Millennium. Reply at 7. Millennium, as the moving party, has the burden to show that AIG Canada cannot establish superior equities as a matter of law. *See Interstate Fire*, 182 Cal. App. 4th at 37. The Court finds that as to its negligence claim, AIG Canada has alleged that that Millennium is responsible for the loss suffered and that its equities are superior to Millenniums. *See* FAC ¶¶ 20, 21, 50-55.

**CONCLUSION**

For the reasons stated above, the Court GRANTS Millennium's motion to dismiss AIG Canada's claims for breach of contract and express indemnity with prejudice. The Court DENIES the motion as to AIG Canada's claim for negligence.

**IT IS SO ORDERED.**

Dated:   April 22, 2015

_____
SUSAN ILLSTON
United States District Judge